THOMAS McEWAN, Jr., et al., v. THE PENNSYLVANIA, NEW JERSEY AND NEW YORK RAILROAD COMPANY.

Argued February 17, 1905—Decided June 12, 1905.

1. Section 1 of the supplement to the General Railroad law, which was approved on March 28th, 1902 (*Pamph. L., p. 214*), now section 23 of the revised Railroad act of 1903 (*Pamph. L., p. 645*), authorizes railroad corporations to carve out from the title of the general owner of land and to acquire by condemnation such rights and easements for the construction of tunnels as may be necessary for the accomplishment of their purposes.
2. The Eminent Domain act of 1900 (*Pamph. L., p. 79*) is applicable to the condemnation of rights and easements under the section above mentioned.
3. The railroad acts above mentioned are not rendered unconstitutional by the fact that they bring the condemnation of tunnel rights within the range of the Eminent Domain act, without indicating by their title that they are intended to amend the latter act.
4. Under section 2 of the Eminent Domain act, it is not necessary, in a petition for the condemnation of tunnel rights, to allege that the proposed tunnel will be so built or be kept in such condition as to make the surface of the ground above the same firm and safe for buildings and other erections thereon, or that it will be at such depth beneath the land as not to interfere with the use thereof.

On *certiorari*.

Before Justices Dixon, Garrison and Swayze.

For the prosecutor, *McEwan & McEwan.*

For the defendant, *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

Dixon, J. This *certiorari* brings up the proceedings on the application presented to one of the justices of this court by the Pennsylvania, New Jersey and New York Railroad Company for the purpose of acquiring by condemnation a certain right and easement in the lands of the prosecutor, being "the

right and easement of erecting, constructing and maintaining one or more tunnels and operating and using in each a railroad, with one or more tracks, below the surface in a portion of the land of such owner beneath the surface thereof." The company was organized under the General Railroad law of 1873 (*Gen. Stat., p.* 2638), and bases its right to acquire the easement in question on section 1 of the supplement to that law, approved March 28th, 1902 (*Pamph. L., p.* 214), now section 23 of the revised Railroad act of 1903. *Pamph. L., p.* 645. The pertinent words of that section are as follows: "It shall be lawful for any corporation  *  *  *  to build its railroad in part by tunnel under lands,  *  *  *  under streets,  *  *  *  railroads and rivers, and in part on or above the surface of the lands, and to enter upon, purchase and acquire in the manner provided by law such lands, or rights, or easements, in lands along its said route upon, over or beneath the surface of the land as shall be necessary for its purposes."

The first point urged against the validity of these proceedings is that the rights and easements referred to in the statute are only such as, at the time when the company applies for condemnation, already exist in a title distinct from the ownership of the land itself; in other words, that against the absolute owner of the land the company cannot proceed to carve out and condemn merely such rights and easements as it needs, but must condemn the land.

The claim thus made by the prosecutor renders the reference in the statute to rights and easements practically meaningless, for it has never been questioned that under the power to condemn land all outstanding interests in the land could be taken. *Lew. Em. Dom.*, § 285. It also contravenes the principle underlying the many decisions in which the courts have held that even under a general power of condemnation corporations were authorized to take only such rights as were necessary. That principle was not wholly abrogated by the judgment in the case of *Currie* v. *New York Transit Co.*, 21 *Dick. Ch. Rep.* 313, but was merely limited so far as to give effect to the will of the legislature clearly expressed in the

statute delegating the power. If the statute be. ambiguous, it should still be construed in accordance with that principle. The import of this statute is, we think, that when the purposes of the company can be accomplished by acquiring rights and easements less than the fee of the land, the extent to which it may condemn the title of the general owner is correspondingly limited.

The next position assumed against these proceedings is that the Eminent Domain act of 1900 (*Pamph. L., p.* 79), under which they are taken, applies only to land or property as an entire physical thing which can be viewed and examined by the commissioners and the jury for the purpose of ascertaining the just compensation to be made to the owner therefor. Such a course, it is urged, is impracticable with regard to the right to construct a tunnel beneath the surface.

The Eminent Domain act is purely remedial, and as such must receive the most liberal construction of which its terms are capable. It was passed when there were many statutes which, under judicial views then prevalent, authorized private corporations to condemn easements only, and it was intended that the practice prescribed by it should supersede the existing practice in all such cases. Manifestly, therefore, we must ascribe to the legislature a purpose to use terms applicable to easements. The words "land" and "property" are each of them capable of including easements in their signification, and we must suppose that they are here employed in that broad sense. Although, strictly speaking, the right to construct a tunnel through land cannot be viewed, yet the surface of the land through which it is to go can be viewed, and that view will afford as much knowledge of the value of the right as it would of the value of the land itself if the fee were to be condemned. In each case the view must be supplemented by much additional information before an intelligent judgment of value can be formed, but in neither case has provision been made for subterranean exploration. We think the requirements of the statute are satisfied by such view and examination as the subject-matter will reasonably admit.

But, it is said, this construction of the Railroad act and the Eminent Domain act is forbidden by the constitutional provision which requires the object of every law to be expressed in its title, because the effect of such construction is to make the Railroad act amendatory of the Eminent Domain act, by bringing within its scope rights and easements which before it did not embrace, and no such effect is indicated by the title of the Railroad act.

This suggestion is without force. The meaning of the Eminent Domain act is not changed by the fact that its operation is enlarged. When passed it was applicable to every species of land and property that might be condemned, and it has the same applicability now. Surely the Practice act is not amended whenever the legislature creates a new right of action or abolishes an old one, and yet such legislation substantially affects the operation of the Practice act.

The only other objection of sufficient weight to call for special notice is that the petition is defective because it fails to show that the proposed tunnel will be so built and kept in such condition as to make the surface of the ground above the same firm and safe for buildings and other erections thereon, and will be at such depth beneath the land as not to interfere with the use thereof.

This objection is answered by section 2 of the Eminent Domain act, which prescribes what the petition shall contain, and does not require any statement of the matters above mentioned.

The question whether the condemning company can enter upon the enjoyment of the rights desired before a jury has ascertained what compensation should be made, is not involved in the present stage of these proceedings.

The proceedings under review should be affirmed, with costs.

The same judgment will be rendered in the case of Alexander Weir et al. against the same defendant.